# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CYNTHIA REED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-13-542-M |
| | ) |
| TETRA TECH, INC., | ) |
| | ) |
| Defendant. | ) |

## **ORDER**

This case is scheduled for trial on the Court's April 2014 trial docket.

Before the Court is defendant's Motion for Summary Judgment, filed January 7, 2014. On February 4, 2014, plaintiff filed her response, and on February 11, 2014, defendant filed its reply. Based upon the parties' submissions, the Court makes its determination.

## I. INTRODUCTION

Plaintiff Cynthia Reed ("Reed") worked as a receptionist at defendant Tetra Tech, Inc.'s ("Tetra Tech") Oklahoma City office from July to October of 2008 through the West Staff Employment Agency, a temporary staffing agency. On October 27, 2008, Reed was hired as a full-time regular employee with Tetra Tech and continued to be employed as a receptionist.

Reed was diagnosed with Lupus on April 4 or 5 of 2012. Reed alleges that on April 5, 2012, she notified Tim Hall ("Hall"), a corporate human resources manager in Lexington, Kentucky, that she had been diagnosed with Lupus. Reed further alleges that she told Hall that she did not want her Oklahoma City supervisor, Geoff Covalt ("Covalt"), to know of her diagnosis, fearing that she would be retaliated against and asked Hall to keep her medical condition confidential. Hall has testified that he did not tell anyone of Reed's medical condition.

On or about April 23, 2012, Reed had a telephone conversation with Larna Bentley ("Bentley"), a Human Resources Department representative in Lexington, Kentucky. Based upon that conversation, Bentley sent Reed Family Medical Leave Act ("FMLA") forms. On or about May 2, 2012, Reed called Hall and requested a computer screen filter to reduce ultraviolet radiation. Hall agreed to provide the filter, and Tetra Tech paid for the filter. During that same conversation, Reed also discussed that she might need further lighting accommodations. Covalt was told by Hall that the reason for the filter was to reduce exposure to ultraviolet ("UV") rays; Hall, however, did not tell Covalt of Reed's medical condition. According to Reed, when the shield was delivered, Covalt wanted to know the purpose of the shield and she explained that she had a disability that required the shield to provide UV protection from the light.

On May 21, 2012, Reed faxed to Hall a completed Certification of Healthcare Provider form. By May 21, 2012, Reed was still able to perform essential job functions of answering incoming calls, travel assignments, conference calls, clerical work, etc. On May 23, 2012, Reed contacted Hall and notified him that her medical condition would require intermittent medical treatment and that she believed that she might need to take intermittent leave in the future for doctor appointments. Reed then asked Hall if he thought it would be a good idea to let Covalt know about her condition, and Hall agreed and volunteered to talk to Covalt first. On May 23, 2012, Reed advised Covalt that she had been diagnosed with Lupus and that she was not responding as well as she thought to the treatment and that she would be having more doctor appointments. Reed explained to Covalt that the shield on her monitor protected her skin from rays and that UV filters for can lights in the reception area may be needed. Reed alleges that Covalt responded that if UV filters were needed

for lights in the reception area that "there would be a whole new ballgame."[1] Reed states that she took this to imply that she would be terminated if further accommodations were sought. On May 23, 2012, Reed transmitted a Leave of Absence Request Form to Bentley requesting possible future "intermittent" leave, stating that the leave requested was "unknown – will vary with treatment and health condition."

On the morning of May 25, 2012, Reed participated in a conference call with Hall and Covalt and was informed that her receptionist position was included in a reduction in force ("RIF") and her employment would end. According to Reed, during the termination meeting, Covalt told her that he and others had decided on a RIF and to let her go. Following Reed's termination, Hall prepared an RIF justification sheet. The justification sheet was signed by Hall and Covalt.

After May 25, 2012, an automated telephone greeting was recorded and callers were directed to press numbers to contact specific persons in the office. Additionally, the front desk was left unattended with a sign that directs visitors to "PLEASE RING BELL FOR SERVICE." A new receptionist was not hired after Reed departed. Maria Wood, Administrative Assistant – Construction, and Rachelle Ewing, Administrative Project Assistant, continued to perform their assigned duties and took over what duties remained of Reed's previously performed tasks.

Tetra Tech alleges that the RIF was necessary because by the Spring of 2012, the Infrastructure Central Region ("ICR") division of Tetra Tech was experiencing a significant reduction in operating income. John Bailie ("Bailie"), a Senior Vice President in Houston, Texas, determined that there was not adequate work to support existing staffing levels in the ICR unit and, thus, the ICR unit needed to reduce its staff. Bailie reviewed the staffing levels of ICR staff in

---

[1] Covalt denies making such a statement.

Oklahoma, Texas, Missouri, and Nebraska. The Oklahoma City office employed 22 people; the San Antonio office employed 23 people, and the Tulsa and Houston offices each employed approximately 40 people. The Oklahoma City office operated with 2 full-time administrative professionals, as well as a full-time receptionist/administrative assistant position (Reed's position); the San Antonio office operated with 2 full-time administrative assistants; the Houston office operated without a receptionist and utilized a fully automated system which routs callers and guests to one of the administrative assistants, and the Tulsa office operated with one full-time administrative assistant who also covered reception duties and a part-time administrative clerk who handled mail and filing, and the contract administrator and construction services administrator provided additional assistance when needed.

Prior to the RIF, on April 25, 2012, Bailie requested Covalt prepare a "peer group analysis." A peer group analysis is often done for purposes of a RIF. Covalt submitted the peer group analysis on May 2, 2012, at 5:06 p.m. Reed alleges that Covalt gave her an unfair rating in the peer group analysis. Tetra Tech alleges that the peer group analysis was not used in the RIF decision making.

Tetra Tech alleges that based upon his review of the staffing levels of the offices in the ICR unit, Bailie concluded that the Oklahoma City office had the highest administrative overhead cost structure when compared to typical staffing levels for offices of similar or larger size. Tetra Tech further alleges that to reduce the overhead cost for the Oklahoma City office, the receptionist/administrative assistant position was selected for elimination because Bailie believed that through the use of technology, phone and guest reception duties could be largely automated and existing staff could assist with the administrative duties. Bailie made the determination to eliminate the Oklahoma City receptionist position on or about May 16, 2012. Other positions were eliminated

4

in the Lincoln, Nebraska office and the San Antonio office. Tetra Tech alleges that Covalt did not participate in comparison of employees for inclusion in the RIF or make the decision to include Reed in the RIF. Tetra Tech further alleges that Hall was not involved in the RIF decision. Reed alleges that both Covalt and Hall were decision makers regarding her termination.

On May 28, 2013, Reed filed the instant action against Tetra Tech, alleging claims under the Americans With Disabilities Amendments Act ("ADA"), the Oklahoma Anti-Discrimination Act ("OADA"), and the FMLA. Tetra Tech now moves for summary judgment as to all of Reed's claims.

## II.     SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

5

*Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III. DISCUSSION

    A. ADA Discrimination Claim[2]

If a plaintiff offers no direct evidence of disability discrimination, as is the case in the instant matter, the court applies the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Equal Emp't Opportunity Comm'n v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011). Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first make out a prima facie case of discrimination. *See id.* "After the plaintiff has made the requisite showing, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions." *Id.* "If the defendant proffers such a reason, the burden then shifts back to the plaintiff to show that the defendant's stated reasons are merely 'pretextual.'" *Id.*

To establish a prima facie case of disability discrimination, a plaintiff must demonstrate that she "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability." *Id.* at 1037-38 (internal quotations and citations omitted). In the case at bar, Tetra Tech does not dispute that Reed

---

[2] In its motion, Tetra Tech notes that it appears Reed is asserting a "failure to accommodate" claim under the ADA and OADA and sets forth arguments as to why summary judgment should be granted as to this claim. Upon review of Reed's response, the Court finds that Reed is not asserting a "failure to accommodate" claim, and the Court, thus, will not address Tetra Tech's arguments regarding this claim.

6

is a disabled person as defined by the ADA or that Reed is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired.

Tetra Tech asserts that Reed has failed to present any evidence that her inclusion in the RIF was because of her claimed disability. Specifically, Tetra Tech asserts that Reed cannot establish this causation element because Bailie, the decision maker, did not know of Reed's claimed medical condition or her request for an accommodation at any time prior to the decision to include Reed in the RIF. Further, Tetra Tech asserts that Reed has presented no evidence that Covalt had any role in Bailie's decision to eliminate a number of positions in the ICR unit, including the receptionist position in Oklahoma City. Finally, Tetra Tech asserts that Reed has not shown that Covalt knew that Reed had requested an accommodation for a disability.

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to Reed and viewing all reasonable inferences in Reed's favor, the Court finds Reed has presented sufficient evidence, albeit barely, to create a genuine issue of material fact as to whether Covalt was involved in the decision to include Reed in the RIF. Specifically, Reed has testified that during the termination meeting Covalt said that "he and others had decided on the reduction of force, on letting me go due to a reduction in force." Deposition of Reed at p.115, lns. 12-14. Additionally, Covalt signed the RIF justification sheet following Reed's termination.

Further, viewing the evidence in the light most favorable to Reed and viewing all reasonable inferences in Reed's favor, the Court finds Reed has presented sufficient evidence, albeit barely, to create a genuine issue of material fact as to whether Covalt knew that Reed had a disability and knew that Reed had requested an accommodation for her disability. Reed has testified that when

7

she received the shield for her computer monitor, she told Covalt that she had a disability that required the shield.

> [T]o establish the third element of a prima facie case of disability discrimination, the plaintiff must show that she was terminated because of her disability, or that the employer terminated the plaintiff under circumstances which give rise to an inference that the termination was based on her disability. This showing requires the plaintiff to present some affirmative evidence that disability was a determining factor in the employer's decision. In other words, [t]he plaintiff must present evidence that, if the trier of fact finds it credible, and the employer remains silent, she would be entitled to judgment as a matter of law. This formulation [of the third prong] should not be interpreted as diminishing the plaintiff's burden in proving her *prima facie* case. While the burden is not onerous, it is also not empty or perfunctory.

*Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 748-49 (10th Cir. 1999) (internal quotations and citations omitted). Further, the temporal proximity of the request for an accommodation or the disclosure of a disability to a plaintiff's termination may contribute to a permissible inference of discriminatory intent. *See id.* at 749. Viewing the evidence in the light most favorable to Reed and viewing all reasonable inferences in Reed's favor, the Court finds Reed has presented sufficient evidence to create a genuine issue of material fact as to whether she was terminated because of her disability. Reed's request for the computer monitor shield and her advising Covalt that she needed the shield because of her disability occurred approximately three weeks before she was terminated. The Court finds that this temporal proximity is sufficient to give rise to an inference that Reed's termination was based on her disability.

Accordingly, the Court finds that Reed has presented sufficient evidence to establish a prima facie case of disability discrimination. Thus, the Court must now determine whether Tetra Tech has proffered a legitimate, nondiscriminatory reason for its decision to include Reed in the RIF and

terminate her. Having reviewed the parties' submissions, the Court finds that Tetra Tech has proffered a legitimate, nondiscriminatory reason – the ICR division of Tetra Tech was experiencing a significant reduction in operating income and the Oklahoma City office had the highest administrative overhead cost structure; so, the reception/administrative assistant position (Reed's position) was selected for elimination because through the use of technology, phone and guest reception duties could be largely automated and existing staff could assist with the administrative duties.

Because Tetra Tech has articulated a legitimate, nondiscriminatory reason for its decision, Reed's "burden is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief." *Butler*, 172 F.3d at 750 (internal quotations and citations omitted). The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to Reed and viewing all reasonable inferences in Reed's favor, the Court finds Reed has presented sufficient evidence to create a genuine issue of material fact as to whether Tetra Tech's proffered reason is unworthy of belief. Specifically, the Court finds the inconsistency of Tetra Tech's position as to whether Reed was compared against Ms. Ewing and Ms. Wood as part of the RIF process is evidence of pretext. Tetra Tech admitted to the Equal Employment Opportunity Commission that Reed was compared; however, Bailie denies there was any comparison. The Court further finds Reed has presented evidence that there are no documents to support the low rating that Covalt gave Reed in the peer group analysis and that Covalt prepared the analysis shortly after he knew about the computer monitor shield accommodation. Reed has further presented evidence that this peer group analysis was likely used in making the RIF determination. Finally, the Court finds the contradictory evidence regarding who the decision maker

9

was is also evidence of pretext. Tetra Tech asserts that Bailie was the only decision maker; however, Hall prepared the RIF justification, and Hall and Covalt signed the RIF justification.

Accordingly, the Court finds that Tetra Tech is not entitled to summary judgment as to Reed's ADA discrimination claim.

### B. ADA Retaliation Claim

If a plaintiff offers no direct evidence of retaliation, as is the case in the instant matter, the court applies the *McDonnell Douglas* burden-shifting analysis. To establish a prima facie case of retaliation under the ADA, a plaintiff must demonstrate that (1) she engaged in protected activity; (2) she suffered a materially adverse action either after or contemporaneous with her protected activity; and (3) there is a causal connection between the protected activity and the adverse action. *See Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010). In the case at bar, Tetra Tech does not dispute that Reed engaged in protected activity or that she suffered a materially adverse action either after or contemporaneous with her protected activity.

Tetra Tech asserts that Reed has not demonstrated that there is a causal connection between the protected activity and the adverse action. Specifically, Tetra Tech contends that Reed has no evidence that Bailie (or any other supervisor) had actual knowledge of Reed's requests for an accommodation prior to the date that the decision was made to eliminate the receptionist position. As set forth above, the Court has found that Reed has presented sufficient evidence to create a genuine issue of material fact as to whether Covalt was involved in the decision to include Reed in the RIF and as to whether Covalt knew that Reed had a disability and knew that Reed had requested an accommodation for her disability. Additionally, as set forth above, the Court finds the temporal proximity of Reed's request for the computer monitor shield and her advising Covalt that she needed

the shield because of her disability and her termination is sufficient to show a causal connection between Reed's request for an accommodation and her termination. Further, for the reasons set forth in Section III(A), the Court finds Tetra Tech has proffered a legitimate, nondiscriminatory reason for Reed's termination and Reed has presented sufficient evidence to create a genuine issue of material fact as to whether Tetra Tech's legitimate, nondiscriminatory reason is pretextual.

Accordingly, the Court finds that Tetra Tech is not entitled to summary judgment as to Reed's ADA retaliation claim.

### C. FMLA Interference Claim

To establish a FMLA interference claim, a plaintiff must demonstrate that (1) she was entitled to FMLA leave, (2) some adverse action by the employer interfered with her right to take FMLA leave, and (3) the employer's action was related to the exercise or attempted exercise of her FMLA rights. *See DeFreitas v. Horizon Inv. Mgmt. Corp.*, 577 F.3d 1151, 1159 (10th Cir. 2009). "Under this theory, a denial, interference, or restraint of FMLA rights is a violation regardless of the employer's intent." *Id.* (internal quotations and citation omitted). However, an employer can defend a FMLA interference claim "by showing that the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Id.* at 1159-60 (internal quotations and citation omitted).

In its motion for summary judgment, Tetra Tech does not specifically dispute that Reed can establish the above three elements of a FMLA interference claim. Tetra Tech instead contends that it is undisputed that Reed's receptionist position would have been eliminated regardless of Reed's request for possible future intermittent FMLA leave. Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to Reed and viewing all

11

reasonable inferences in Reed's favor, the Court finds Reed has presented sufficient evidence to create a genuine issue of material fact as to whether Reed's receptionist position would have been eliminated regardless of Reed's request for possible future intermittent FMLA leave.

Accordingly, the Court finds that Tetra Tech is not entitled to summary judgment as to Reed's FMLA interference claim.

### D. OADA Claim

Tetra Tech contends that Reed's claims under the OADA fail for the same reasons that her claims fail under the ADA. Because this Court has found that Tetra Tech is not entitled to summary judgment as to Reed's ADA claims, the Court finds Tetra Tech is also not entitled to summary judgment as to Reed's OADA claims.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, the Court DENIES Tetra Tech's Motion for Summary Judgment [docket no. 32].

**IT IS SO ORDERED this 10th day of March, 2014.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE